UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED RENTALS, INC. and | ) | |
| UNITED RENTALS (NORTH AMERICA), INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| MICHAEL J. CIOTTA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | APRIL 2, 2009 |

## COMPLAINT

Plaintiffs, United Rentals, Inc., United Rentals (North America), Inc. and their affiliates (collectively "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against Defendant, Michael J. Ciotta ("Ciotta" or "Defendant"), hereby state and allege the following:

**Nature of Action**

1.     This action is based on the willful breach of confidentiality clauses and restrictive covenants contained in a confidentiality and non-competition agreement, and sets forth claims for breach of contract, violation of the Uniform Trade Secrets Act, and tortious interference with economic advantage and existing business relationships.

**Parties, Jurisdiction and Venue**

2.     United Rentals, Inc. and United Rentals (North America), Inc. are Delaware corporations with their principal places of business in Greenwich, Connecticut. United is engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Florida. United rents and sells, among other things, trench shoring equipment

such as aluminum trench shields, steel trench shields, manhole shields, bedding boxes, crossing plates, pipe plugs, slide rail and build-a-box systems, among other items. Additionally, and at all relevant times thereto, United operated a branch facility in Orlando, Florida ("Orlando Branch").

3. At all times relevant hereto and up to March 11, 2009, Ciotta was a citizen of Florida and an employee of United.

4. Jurisdiction over this matter arises under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Ciotta contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of his confidentiality and non-competition agreement ("Agreement") with United dated November 1, 2004. The Agreement provides, in relevant part, the following:

> <u>Consent to Personal Jurisdiction</u>. Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

The claims contained herein arise, in part, out of the terms of the Agreement referenced above.

6. Venue is proper in this Judicial District under 28 U.S.C. § 1391(a)(2) & (a)(3) because the intellectual property that is the subject of the action is derived from and/or maintained in this district and because Ciotta contractually submitted to the exclusive jurisdiction of this Court when he agreed to the terms of the Agreement.

**General Allegations**

7. At all relevant times up until March 11, 2009, Ciotta was an employee of United. During the course of his employment, Ciotta served as, among other things, an Outside Sales Representative and operated out of United's Orlando Branch.

8. United's Orlando Branch generates significant revenues from, among other things, the rental of trench safety equipment to its customers. During his employment, Ciotta contributed significantly towards the revenues of the Orlando Branch.

9. As an Outside Sales Representative with United, Ciotta further had controlled access to certain of United's trade secrets. United's trade secrets include, but are not limited to, such things as: (1) gross rental data; (2) budget processes from market areas and rental projections; (3) marketing plans and strategies; (4) details of contracts; (5) actual and prospective customer data, including identities of United customers (i.e., United's customer list and customer contacts); (6) pricing and discount information; (7) cost information, including special programs and discount structures negotiated with particular equipment vendors; (8) information on the sources and nature of financing United is able to secure for its customers; and (9) fleet information, including its make-up, cost and utilization.

10. United's trade secrets and other confidential information are only shared with employees as necessary, and only to those who agree to keep it confidential.

11. None of the foregoing trade secrets discussed above was known or open to the public and United undertook reasonable measures to keep the trade secrets confidential and out of the public domain.

**Ciotta's Agreement**

12. In order to protect its customer goodwill, confidential information, and trade secrets, United requested that Ciotta enter, and Ciotta agreed to enter, into the Agreement.

13. In this regard, Ciotta agreed to sign the Agreement that contained a proscription against divulging confidential information.

14. The Agreement contained the following provisions, to which Ciotta agreed, that outlined and defined "Confidential information" as follows:

    (f) Confidential information includes, but is not limited to:

        (i) business, pricing and management methods;

        (ii) finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;

        (iii) names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;

        (iv) technical information, work products and know-how;

        (v) cost, operating, and other management information systems, and other software and programming;  and

        (vi) the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.
        .

15. The Agreement also contained a restrictive covenant, which Ciotta accepted that restricted Ciotta from competing directly or indirectly with United, anywhere within the limited area of a 100 mile radius of the Orlando Branch during his employment and 12 months thereafter. Specifically, the Agreement provides:

>   (a)   During his . . . employment by the Company and for a period of 12 months immediately following the termination of his . . . employment for any reason whatsoever , whether or not for cause or by resignation, Employee will not, directly or indirectly (whether through affiliates, relatives or otherwise):
>
>   (i)   in any Restricted Area (a "<u>Restricted Area</u>" means the area within a 100 mile radius of any and all Company locations in which Employee performed services for, or had management responsibilities for, at any time during the 24 month period immediately preceding the termination of Employee's employment with the Company), be employed or retained by any person or entity who or which then competes with the Company to any extent, nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation;
>
>   (ii)   solicit or accept the business of, or call upon, any person or entity who or which is or was (A) a customer, supplier, manufacturer, finder, broker, or other person who had a business relationship with the Company, or who was a prospect for a business relationship with the Company, at any time during the period of his . . . employment, or (B) an affiliate of any such person;
>
>   (iii)   approve, solicit or retain, or discuss the employment or retention (whether as an employee, consultant or other otherwise) of any person who was an employee of the Company at any time during the one-year period preceding the termination of Employee's employment by the Company;
>
>   (iv)   solicit or encourage any person to leave the employ of the Company;

5

      \*    \*    \*    \*    \*    \*    \*    \*

    (vi)    own any interest in or be employed by or provide any services to any person or entity, which engages in any conduct which is prohibited to Employee under this Section[.]

**Breaches/Tortious Conduct of Ciotta**

16. On or about March 11, 2009, Ciotta resigned his employment at United. United subsequently reminded Ciotta of his obligations under his confidentiality and non-competition agreement.

17. United subsequently came to learn that Ciotta has now begun marketing and providing trench safety equipment within the Restricted Area. In this regard, upon information and belief, United has been made aware that Ciotta has targeted United customers.

18. Upon information and belief, Ciotta is performing these services on behalf of an entity doing business as "Professional Shoring & Supply" ("PSS"). PSS operates a location less than 3 miles away from United's Orlando Branch. Ciotta never advised United of his new position as required under his Agreement.

19. Upon information and belief, in engaging in this activity, Ciotta used or inevitably will use the valuable confidential trade secrets of United and/or provide same to PSS.

20. Ciotta committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

21. Ciotta committed the acts alleged herein for his own benefit and the benefit of PSS.

**COUNT I – Breach of the Agreement**

22. United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 21 above as though fully set forth herein.

23. United and Ciotta exchanged valuable consideration in support of the Agreement.

24. United duly performed all of its obligations pursuant to the Agreement.

25. United is informed and believes that in his new position, Ciotta has actively competed with United in order to solicit customers, utilizing United's trade secrets and/or confidential information in conjunction with his efforts. Ciotta's activity has occurred directly within the Restricted Area as defined by Ciotta's Agreement.

26. Ciotta's conduct within the Restricted Area and/or in soliciting customers following his employment with United constitutes a material breach of the Agreement, including the restrictive covenants contained therein.

27. Ciotta's conduct set forth in the previous paragraph further constitutes a material breach of the implied covenant of good faith and fair dealing.

28. Given his position as an Outside Sales Representative with United, Ciotta was privy to confidential trade secrets, which he will inevitably disclose to PSS.

29. Upon information and belief, after leaving United, and thereafter, in violation of the Agreement, Ciotta provided PSS with confidential and/or trade secrets and Ciotta used said information in an effort to compete with United on behalf of PSS.

30.     Ciotta's conduct, all while using United's confidential trade secrets, is a material breach of the Agreement, including, but not limited to, the restrictive covenants.

31.     As a proximate result of Ciotta's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

32.     As a result of the foregoing activities, Ciotta is liable to United for breach of contract.  United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will, as well as losses in an amount in excess of $75,000.00, but not yet fully ascertained, and which will be further determined according to proof.

33.     United has no adequate remedy at law for Ciotta's willful breach of the Agreement and restrictive covenants set forth or incorporated therein, in that:  (i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreement would constitute irreparable harm to United.

**COUNT II -   Trade Secret Misappropriation in Violation of the Uniform Trade Secrets Act**

34.     United realleges and reincorporates herein by reference the allegations contained in Paragraphs 1 through 33 above as though fully set forth herein.

35.     As an Outside Sales Representative for United, Ciotta had access to confidential information, such as the following:

- United's confidential customer lists that are not readily ascertainable from public sources.  United spent considerable time, energy and money cultivating these customers.

8

- United's confidential financial information and cost and profit margins. These figures are not available to the public and are held in confidence by United.

- United's cost information and discount information from certain vendors. United has been able to negotiate special terms with vendors that are not readily ascertainable by competitors and are terms that are kept in confidence by United.

- United's fleet information, including its make-up, cost and utilization. This information is not available to the public and is held in confidence by United.

- United's marketing plans and strategies, including United's potential satellite operations and other expansion plans.

36. The aforementioned trade secrets are not known to all United employees, nor are they known to those working in the industry. United's trade secrets were conveyed confidentially to Ciotta, as necessary, in order to allow Ciotta to fully carry out his job responsibilities on behalf of United.

37. United took reasonable measures to keep the trade secrets confidential. As stated above, only certain employees had access to trade secrets. Trade secret information was provided only to those who, like Ciotta, agreed to keep such information confidential. Indeed, United required Ciotta to sign a confidentiality agreement protecting the integrity of this information.

38. This information is highly valuable to United, and could enable United's competitors to challenge pricing and vendor relationships and/or steal private customer lists.

39. United spent considerable sums of money acquiring, maintaining and guarding this information.

40. Upon information and belief, Ciotta misappropriated United's trade secrets when he began soliciting customers, using his knowledge of whom to contact, their product and service demands, and United's preferential pricing and terms.

41. Upon information and belief, Ciotta misappropriated United's trade secrets when he wrongfully used those trade secrets on his own behalf and on PSS's behalf, and when he, on information and belief, provided same with his knowledge of those trade secrets.

42. There is a substantial threat that Ciotta will continue to use and disclose United's trade secrets in an effort to acquire United's customers for the benefit of his new employer and himself personally.

43. Ciotta willfully and maliciously misappropriated United's trade secrets, in that Ciotta intended to solicit customers for the benefit of PSS and his own personal financial interest, all to the detriment of United.

44. Ciotta's wrongful conduct is a violation of the Uniform Trade Secrets Act.

45. As a direct and proximate result of Ciotta's wrongful conduct, United has suffered and will continue to suffer irreparable damages and money damages.

46. As a direct result of Ciotta's willful conduct, United is entitled to punitive damages and attorneys' fees.

47. Based on Ciotta's unlawful acts as alleged herein, United is being irreparably harmed in that: (i) United's trade secrets are a unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom, is continuing; and, (iv) the Defendant acknowledged, in writing, that a breach of the Agreement would constitute irreparable harm to United.

**COUNT III -- <u>Tortious Interference With Prospective Economic Advantage and Existing Business Relationships</u>**

48.     United realleges and reincorporates herein by reference the allegations of Paragraphs 1 through 47 above as though fully set forth herein.

49.     This Count states a claim for relief against Ciotta for tortious interference with United's prospective economic advantage and existing business relationships with United's customers.

50.     Economic relationships have existed between United and its customers and other entities, which have been advantageous to United.

51.     Being in the business of, among other things, renting and selling trench safety equipment within Orlando and the surrounding area, United has developed valid and existing business relationships with hundreds of customers with the probability of future economic benefit for United.

52.     United's Orlando Branch facility historically generates significant revenues, which are a result of United's substantial time, effort, training and resources devoted to developing business relationships with its customers.

53.     As an Outside Sales Representative for United at the Orlando Branch, Ciotta was aware, and had knowledge of the existence of the relationships United enjoyed with its customers.

54.     Upon information and belief, in spite of this knowledge, Ciotta wrongfully interfered with United's prospective economic advantage and existing business relationships by disclosing United's trade secrets and proprietary information to PSS and soliciting customers, all in violation of the Agreement.

55. Ciotta engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts or omissions would necessarily interfere with or disrupt the economic relationships that United enjoyed with its customers, and these acts demonstrate Ciotta's intentional or negligent conduct.

56. Upon information and belief, Ciotta directly interfered with the economic relationships United enjoyed with its customers.

57. If not for the conduct of Ciotta, United was reasonably certain to have entered into continued business relationships with its customers.

58. Ciotta's conduct was intentional and willful in that Ciotta intended to harm United's economic and financial interest.

59. Ciotta's conduct was wrongful and not justified, privileged or excusable.

60. As a direct and proximate result of Ciotta's wrongful conduct, United has suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy United.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff **UNITED** respectfully requests judgment in its favor and against Defendant **MICHAEL J. CIOTTA** as follows:

1. That Defendant breached the Agreement with United and the restrictive covenants contained therein;

2. That Defendant violated the Uniform Trade Secrets Act.

3. That Defendant tortiously interfered with United's prospective economic advantage and existing business relationships.

4. That the Court enter an Order, preliminary and permanently enjoining Defendant, **MICHAEL J. CIOTTA**, pursuant to the terms of the Agreement from:

> directly or indirectly being employed or retained by any person or entity who or which competes with United to any extent within the Restricted Area for a 12 month period as provided in the Agreement;
>
> directly or indirectly owning any interest in or rendering to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation to any person or entity who or which competes with United to any extent within the Restricted Area, for a 12 month period as provided in the Agreement;
>
> directly or indirectly soliciting the business of, or calling upon any person or entity who or which is or was a customer, supplier, manufacturer, finder, broker or other person who had a business relationship with United, or who was a prospect for a business relationship with United, at any time during the period of Defendant's employment, or an affiliate of any such person, for a 12 month period as provided in the Agreement;
>
> directly or indirectly approving, soliciting or retaining, or discussing the employment or retention, of any person who was an employee of the Plaintiff during the one-year period preceding the Defendant's separation as provided in the Agreement, for a 12 month period as provided in the Agreement;

> directly or indirectly soliciting or encouraging any person to leave the employ of United, for a 12 month period as provided in the Agreement;
>
> directly or indirectly calling upon or assisting in the acquisition of any company which was, during the term of the Agreement, either called upon by an employee of United or by a broker or other third party for possible acquisition by United or for which an employee of United or other person made an acquisition analysis for United, for a 12 month period as provided in the Agreement;
>
> directly or indirectly owning any interest in or being employed by or providing any services to any person or entity which engages in any conduct which is prohibited to Defendant under Section 3 of the Agreement;
>
> directly or indirectly disclosing or otherwise using any of Plaintiff's confidential trade secrets or confidential information, as defined and described in Paragraph 2 of the Agreement between Plaintiff and Defendant for any purpose whatsoever;

5.   That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein;

6.   That the Court award United punitive damages;

7.   That the Court award United its attorneys' fees;

8.   That the Court award United punitive damages, attorneys' fees, expenses and costs, pursuant to the Agreement and/or common law; and

9.   That the Court grant United such additional relief as is just and proper, including, but not limited to the imposition of a constructive trust and disgorgement of profits.

Dated this 2nd day of April, 2009.

                THE PLAINTIFFS
                UNITED RENTALS, INC.
                UNITED RENTALS (NORTH AMERICA), INC.


                By: _____/s/_____
                    Brian C. Roche  -  ct 17975
                    Gerald C. Pia, Jr. – ct 21296
                    Roche Pia, LLC
                    Two Corporate Drive, Suite 234
                    Shelton, CT 06484
                    Phone: (203) 944-0235; Fax: (203) 225-1244
                    E-mail: broche@rochepia.com
                            gpia@rochepia.com